IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| DOMINION COVE POINT LNG, L.P. ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Civil Action No. PJM-06-2447 |
| ) | |
| 2.0777 ACRES OF LAND MORE OR ) | |
| LESS IN CHARLES COUNTY, ) | |
| MARYLAND, *et al.*, ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## MEMORANDUM OPINION

Dominion Cove Point LNG, L.P., plaintiff, is a natural gas company seeking condemnation of easements in order to construct a natural gas pipeline. Defendant Bruce M. Swinford is the owner of the property plaintiff seeks to condemn.[1] On July 17, 2007, plaintiff filed a Motion for Partial Summary Judgment and for Possession of Easements.[2] (Paper No 36.) Defendant Mr. Swinford wrote two letters to the Court, dated July 20, 2007 and August 10, 2007, responding in opposition to plaintiff's Motion. (Paper Nos. 39, 41.) Plaintiff filed a Reply to Defendant's Response to Plaintiff's Motion for Partial Summary Judgment and for Possession of

---

[1] Defendant Bruce Swinford is not represented by counsel in this litigation. In addition, Mr. Swinford has been acting on behalf of his mother in a companion case involving contiguous property, Dominion Cove Point LNG, L.P. v. .1016 Acres of Land More or Less in Charles County, Maryland, et al., AW-06-2449.

[2] This Court granted plaintiff leave to file the Motion for Partial Summary Judgment and for Possession of Easements on July 23, 2007. (Paper No. 38.) Plaintiff had previously filed a Motion for Entry of Order Granting Possession of Easements and Establishing Bond Amount in this case. (Paper No. 18.) Defendant Swinford, who is acting *pro se* in this matter, responded to this Motion for Entry of Order by a letter to the Court expressing his opposition to the court's grant of easements. (Paper No. 19.) Plaintiff's Motion for Entry of Order was denied without prejudice by this Court, because plaintiff failed to address the relevant legal standards a court must apply in considering a grant of possession of easements prior to the final determination of a condemnation suit. (Paper No. 24.)

1

Easements on August 2, 2007. (Paper No. 40.) No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2004). For the reasons that follow, Plaintiff's Motion for Partial Summary Judgment and for Possession of Easements will be granted.

## BACKGROUND

The following facts are either undisputed or are construed in the light most favorable to Defendant.[3] Plaintiff is an interstate natural gas company as defined by § 2(a) of the Natural Gas Act, 15 U.S.C. § 717 *et seq.* As such, plaintiff is qualified to construct, own, operate and maintain pipelines to transmit natural gas and its by-products. Defendant Bruce Swinford is the record owner of real property consisting of 60.03 acres, more or less, in the Sixth Election District of Charles County, Maryland. The property is described in a deed dated April 24, 1984 and recorded in the land records of Charles County, Maryland, in Liber 979, Page 334. This property is further identified as follows: Tax Account ID 09-06-030165, Map 14, Grid 3, Parcel 2. (Compl. ¶ 4.) Mr. Swinford admits being the record owner as described by plaintiff. *See* Paper No. 7.[4]

Plaintiff owns a liquefied natural gas ("LNG") import facility located in Lusby, Maryland (the "Cove Point LNG Facility"). Plaintiff also operates a natural gas pipeline extending from

---

[3] The letters of Mr. Swinford do not offer any permissible evidence for this Court's consideration. The only permissible evidence this Court may consider, pursuant to Federal Rule of Civil Procedure 56, are the declarations of David L. Mordan, Jr., P.E. and Larry Sommerville filed in support of plaintiff's motion, as well as the pleadings.

[4] There are four named Defendants in the instant lawsuit: (a) 2.0777 Acres of Land More or Less in Charles County, Maryland, (b) Bruce M. Swinford, (c) Thomas F. Mudd, *trustee*, and (d) John F. Mudd, *trustee*. Mr. Swinford is the record owner of the subject property. (Compl. ¶ 4.) *See also* Paper No. 7. Messrs. Thomas and John Mudd are trustees under a Deed of Trust on the subject property for the benefit of Mrs. Marion Duffer, who died on November 18, 1992. (Compl. ¶ 5.) *See also* Paper No. 9. On October 31, 2006, the Mudds filed an Answer to the Complaint, praying for dismissal of this suit in condemnation. (Paper No. 9.) More recently, in July 2007, counsel for the Mudds participated in the production of the Pretrial Order in this case by reviewing a draft Order and informing plaintiff that the Mudds had no additional information to add to the order. (Paper No. 34 at 3 n.1.) The Mudds have not responded to the Plaintiffs' Motion for Partial Summary Judgment.

the Cove Point LNG Facility to Marshall Hall in Charles County, Maryland, the existing pipeline. (Paper No. 36, Mordan Decl. ¶ 1.)

On April 15, 2005, two Dominion companies, plaintiff and Dominion Transmission, Inc. ("DTI") filed three separate but related certificate applications with the Federal Energy Regulatory Commission ("FERC"). These three applications collectively comprise the "Cove Point Expansion Project." The purpose of this project "is to allow the importation of LNG and to transport these new, additional, and vital supplies of natural gas to consumers throughout the eastern United States." (Mordan Decl. ¶ 2.)

Of the three FERC applications filed, one concerns the expansion of the Cove Point LNG Facility (FERC Docket No. CP05-130). The other application filed by plaintiff concerns an approximately 48 miles of 36" diameter natural gas pipeline No. TL-532 extending from the import terminal at Cove Point to Marshall Hall in Charles County, Maryland, on the east side of the Potomac River (FERC Docket No. CP05-132). This pipeline is the subject of the eminent domain proceedings in this case. The third application by DTI has no bearing on this litigation. (Mordan Decl. ¶¶ 3-4.)

After the three applications were extensively reviewed by FERC and numerous federal, state and local agencies, on June 16, 2006, FERC approved the Cove Point Expansion Project by issuing Certificates of Public Convenience and Necessity to plaintiff and DTI. FERC set a deadline of June 15, 2009 for the completion of all construction activities. (Mordan Decl. ¶ 5.)

The pipeline installation project impacts two hundred eighty-five (285) properties in Charles, Calvert and Prince George's Counties, Maryland. The pipeline construction season is relatively short, roughly mid June to October. Plaintiff plans to construct approximately 10 miles

of the 48 miles of pipeline during 2007. Plaintiff must be ready to construct the remainder of the pipeline (approximately 38 miles) across the remaining properties beginning in June of 2008 in order to complete all construction activities during the 2008 construction season. (Mordan Decl. ¶¶ 6-8.)

Plaintiff has hired a pipeline contractor, and in accordance with the contract, plaintiff must "provide its contractor with access to the entire right of way for the TL-532 pipeline across all affected properties by June 2008. If [plaintiff] is unable to do so, then [plaintiff] is likely to suffer negative financial ramifications for failing to comply with its contractual obligations." (Mordan Decl. ¶ 11.) Plaintiff cannot begin to construct the pipeline until plaintiff acquires certain permanent and temporary easements over Mr. Swinford's property which are necessary for constructing, maintaining, operating, altering, testing, replacing and repairing the pipeline. Mr. Swinford shall retain the right to use his property in any manner subject to the temporary and permanent easements which preclude Mr. Swinford from interfering with plaintiff's use and enjoyment of rights. Plaintiff has negotiated with Mr. Swinford, both independently and with the assistance of a Magistrate Judge of the District of Maryland, and has made bona fide efforts to acquire the easements by contract.[5] The parties are unable to agree on the compensation to be paid. (Compl. ¶ 19; Paper Nos. 31, 39, 40, 41.) Plaintiff requests the right for immediate possession of the easements for the purpose of constructing the pipeline and, pursuant to the authority granted to Plaintiff by section 7(h) of the Natural Gas Act, 15 U.S.C. § 717f(h), seeks to

---

[5] Negotiations in this case have been impacted by the fact that Mr. Swinford entered into an Agreement of Sale concerning the property at issue in this suit with Pulte Home Corporation, a real estate development company, on April 12, 2005. (Paper Nos. 7, 10.) Pulte Home Corporation is not a party to this condemnation suit and does not hold title to any part of the property at issue, but has participated in settlement negotiations.

take by eminent domain those easements.

## APPLICABLE LAW

The Natural Gas Act ("NGA"), 15 U.S.C. § 717f(h) (2000), grants gas companies the power of eminent domain. *E. Tennessee Natural Gas Co. v. Sage*, 361 F.3d 808, 821 (4th Cir. 2004), *cert. denied sub nom.*, *E. Tennessee Natural Gas Co.*, 543 U.S. 978 (2004). A gas company must first obtain a certificate of public convenience and necessity from FERC. *Id.* at 818. The application to FERC must contain, among other information, (1) a description of the proposed pipeline project, (2) a statement of the facts showing why the project is required, and (3) the estimated beginning and completion date of the project. 15 U.S.C. § 717f(d); 18 C.F.R. § 157.6(b) (2007). Notice of the application is filed in the Federal Register, 18 C.F.R. § 157.9 (2006), public comment and protest is permitted, 18 C.F.R. § 157.10 (2007), and FERC conducts a public hearing on the application, 18 C.F.R. § 157.11 (2007). "As part of its evaluation FERC must also investigate the environmental consequences of the proposed project and issue an environmental impact statement." *E. Tennessee*, 361 F.3d at 818; *see* 42 U.S.C. § 4332 (2000). After the evaluation, FERC issues a certificate if it finds that the proposed project "is or will be required by the present or future public convenience and necessity[.]" 15 U.S.C. § 717f(e). FERC also specifies a date for the completion of construction and the start of service. 18 C.F.R. § 157.20(b). The certificate may include any terms and conditions that FERC deems "required by the public convenience and necessity." 18 C.F.R. § 157.20 (2007). Once FERC has issued a certificate, the NGA empowers the certificate holder to exercise "the right of eminent domain" over any lands needed for the project. 15 U.S.C. § 717f(h).

The NGA provides that "[w]hen any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, . . . it may acquire the same by the exercise of the right of eminent domain in the district court of the United States . . . ." *Id.* "A special rule, [Federal Rule of Civil Procedure] 71A, governs the procedure in a condemnation action." *E. Tennessee*, 361 F.3d at 821. To commence the condemnation, the certificate holder must file a complaint which sets forth the authority for the taking, the use for which the property is being taken, the identity of the property, and the interest to be acquired. Fed. R. Civ. P. 71A(c)(2). The action then proceeds in due course to the determination of just compensation for the owner of the land. Fed. R. Civ. P. 71A(h). After the determination and payment of just compensation, the condemning authority can take possession of the property. *E. Tennessee*, 361 F.3d at 821.

In this case plaintiff seeks possession before the determination and payment of compensation. The Constitution does not prohibit a condemnor from obtaining possession of property before compensation is paid, and neither the NGA nor Rule 71A addresses this issue. *Id.* at 361 F.3d at 821-24. However, Rule 71A provides that the other Federal Rules of Civil Procedure apply to any matter not covered by Rule 71A. *See* Fed. R. Civ. P. 71A(a). As a result, Rule 65(a)'s provision for preliminary injunctions applies to condemnation cases. "[A] gas company with condemnation power under the NGA may apply under Rule 65(a) for a preliminary injunction awarding immediate possession." *E. Tennessee*, 361 F.3d at 824. Thus, once the Court determines that the complainant has a right to take the easement, it may then consider a request for a preliminary injunction granting immediate possession. *Id.* at 825.

In deciding whether to grant a preliminary injunction, the Court should consider (1) the likelihood of irreparable harm to the plaintiff if the injunction is denied, (2) the likelihood of harm to the defendant if the injunction is granted, (3) the likelihood that the plaintiff will succeed on the merits, and (4) the public interest. *Blackwelder Furniture Co. v. Seilig Mfg. Co.*, 550 F.2d 189, 193-96 (4th Cir. 1977). "[T]he [gas] company must demonstrate that it will suffer irreparable harm without immediate possession, and the company's harm must be weighed against any harm to the landowner." *E. Tennessee*, 361 F.3d at 825 (citation omitted). Finally, the gas company must provide security for reasonably adequate and certain payment of compensation. *Id.* at 826; *see also* Fed. R. Civ. P. 71A(j) ("The plaintiff shall deposit with the court any money required by law as a condition to the exercise of the power of eminent domain[.]"). The Fourth Circuit concluded that these safeguards adequately protect landowners in cases where immediate possession may be granted. *E. Tennessee*, 361 F.3d at 826.

## ANALYSIS

A.   *Plaintiff is authorized to condemn the property.*

The NGA provides that:

> When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas, . . . it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located . . . .

15 U.S.C. § 717f(h).

It cannot be disputed that plaintiff holds a certificate of public convenience and necessity from FERC. *See* Compl., Ex. 2. Plaintiff provided Mr. Swinford with a written offer to purchase the easements and pay for timber. When Mr. Swinford characterized the offer as too low, plaintiff commissioned an appraisal which valued the easements at a higher amount, and made an offer to Mr. Swinford in the higher amount.[6] Plaintiff engaged in face to face negotiations with Mr. Swinford. Further, a court supervised mediation occurred and a settlement was not reached. Based on Larry Sommerville's unopposed declaration, as well as Mr. Swinford's letters to the court, it is undisputed that plaintiff and Mr. Swinford failed to agree upon compensation and that plaintiff was unable to acquire the necessary easements by agreement. *See* Paper Nos. 7, 10, 19, 36, 39, 41. Thus, in accordance with § 7(h) of the NGA, plaintiff is entitled to condemn the property.

B.   *Plaintiff is entitled to immediate possession.*

   1.   *The likelihood of irreparable harm to Plaintiff.*

Plaintiff's Project Manager, David L. Mordan, Jr., outlined the necessity of beginning the construction of the remainder of the pipeline across all other properties in June of 2008. Construction during the months of November through February is generally expensive and impractical due to inclement weather. Maryland's environmental restrictions further curtail the construction season by prohibiting "constructing across intermittent streams during the period from March 1 through June 15." (Paper No. 36, Mordan Decl. ¶ 7.) The combination of the limitations caused by weather and Maryland's environmental restrictions essentially prevent any

---

[6] Thereafter, Mr. Swinford commissioned an appraisal of the subject easements which set the value of the easements at $208,000.00.

construction during the winter and spring of 2009. "Constructing certain portion[s] of the pipeline in 2007 and being ready to begin construction on all remaining properties at the start of the pipeline construction season in June of 2008 will reduce both the risk and the impact of unusually severe weather." (Mordan Decl. ¶ 10.) Thus, for plaintiff to comply with the FERC deadline of June 15, 2009, the remaining pipeline construction must occur during the summer and fall of 2008.

Second, as a general practice, pipeline construction is done in a linear fashion. "[I]f [plaintiff] is unable to begin [p]ipeline construction prior to the determination of just compensation, it will be forced to repeatedly mobilize, demobilize, and remobilize its contractors, equipment, and materials around each property for which compensation has not been finalized." (Mordan Decl. ¶ 9.) Such a process is not only inefficient but would dramatically increase construction cost, significantly delay construction and likely threaten plaintiff's compliance with the FERC deadline.

Third, plaintiff has selected a pipeline contractor. In accordance with the contract, plaintiff is required to provide the pipeline contractor with access to the right of way for the pipeline across all affected properties by June of 2008. If plaintiff is unable to comply with these terms, plaintiff is required to pay a penalty. "Further, if the [pipeline] contractor is unable to achieve the contractual completion dates as a result of delay due to lack of possession of the easements, there will be further financial ramifications for [plaintiff]." (Mordan Decl. ¶ 11.)

Finally, separate hearings on compensation will be required for each of the many tracts of property plaintiff seeks to condemn, and scheduling and conducting those hearings will take an extended period of time. *See E. Tennessee*, 361 F.3d at 828. In *E. Tennessee*, the Fourth Circuit

concluded that the district court's finding that "the Patriot Project would suffer 'undue delay' and that this delay would cause 'significant financial harm' both to [the East Tennessee Natural Gas Company] and some of its putative customers" was sufficient to show a likelihood of irreparable harm if immediate possession was not granted, *i.e.*, without a preliminary injunction. *Id.* at 828-29. In issuing the certificates of public convenience and necessity, FERC mandated that the construction of the facilities shall be completed within three years or by June of 2009. *See* Compl., Ex. 2 (FERC Order Issuing Certificates and Granting Section 3 Authority, at 73, ¶ H). This deadline underscores the significant undue expense that would be created by a delay in the grant of easements. Therefore, for the above reasons, the Court finds there is a likelihood of irreparable harm to plaintiff if immediate possession is not granted.

    2.    <u>The likelihood of harm to the landowner.</u>

The unopposed Declaration of Larry Sommerville details the early attempts of plaintiff to negotiate in good faith with Mr. Swinford, making bona fide efforts to acquire the necessary easements by agreement. Mr. Sommerville, an employee of Universal Field Services, Inc., ("Universal"), has been engaged in the business of right-of-way acquisitions for almost 30 years involving more than 100 projects. (Paper No. 36, Sommerville Decl. ¶ 1.) Plaintiff retained Universal to assist plaintiff in providing land acquisition services as plaintiff's agent for the Cove Point Expansion Project. (Sommerville Decl. ¶ 2.) According to Mr. Sommerville, on April 28, 2006, a written offer was delivered to Mr. Swinford to purchase the easements for $15,484.00 plus an additional $343.35 for timber. (Sommerville Decl. ¶ 8.) On May 1, 2006, plaintiff's agent spoke with Mr. Swinford, who expressed that plaintiff's offer was too low and did not

account for Mr. Swinford's agreement to sell his property to a real estate development company.[7] (Sommerville Decl. ¶ 9.)

Thereafter, Plaintiff retained Wayne McDonald, an independent and licensed real estate appraiser, to appraise the easements. (Sommerville Decl. ¶ 10.) Mr. McDonald provided his appraisal of the easements on June 20, 2006. He concluded the easements, collectively, were worth $29,635.68. (Sommerville Decl. ¶ 11.) Two days later, plaintiff's agent mailed a written offer to Mr. Swinford stating that plaintiff's final offer for the easements was $29,635.68 with an additional $343.35 for timber. Plaintiff's agent provided Mr. Swinford with a copy of Mr. McDonald's appraisal and encouraged Mr. Swinford to call plaintiff's agent if he had any questions. (Sommerville Decl. ¶ 12.)

On August 5, 2006, Mr. Swinford informed plaintiff's agent that he was concerned that the impact of the pipeline would be to cause Mr. Swinford to lose potential lots on his property and thus reduce the price owed him by the purchaser under his land sale contract. Plaintiff's agent asked Mr. Swinford to make a counteroffer, and Mr. Swinford said that he would "be in touch soon." (Sommerville Decl. ¶ 15.) On August 14, 2006, plaintiff, through its counsel, sent Mr. Swinford a letter communicating plaintiff's final offer to purchase the easements from Mr. Swinford $29,635.68, plus $343.35 for timber, thereby avoiding litigation. (Sommerville Decl. ¶ 16.) On September 7, 2006, plaintiff's agent and Mr. Swinford made an appointment to meet with a representative of the developer on September 18, 2006, in Baltimore, Maryland. (Sommerville Decl. ¶ 18.) On September 18, 2006, the scheduled meeting was cancelled.

---

[7] At that time, defendant would not reveal the identity of a Developer, Sommerville Decl. ¶ 15, but has since identified Pulte Home Corporation.

(Sommerville Decl. ¶ 19.) Three days later, plaintiff filed its Complaint in Condemnation against the property at issue in this lawsuit. (Paper No. 1.)

On July 12, 2007, a representative and counsel for plaintiff, a representative and counsel for Pulte, and Mr. Swinford participated in a settlement conference before the Honorable William Connelly, United States Magistrate Judge for the District of Maryland, in an effort to reach a negotiated settlement of this condemnation suit. (Paper No. 33.) This conference did not result in a settlement agreement. In short, despite efforts thus far, plaintiff has been unable to acquire the easements from Mr. Swinford. (Paper No. 36, Sommerville Decl. ¶ 25.)

Mr. Swinford has responded, by letters to the Court, to plaintiff's Complaint, plaintiff's Motion for Entry of Order Granting Possession of Easements and Establishing Bond Amount, and the present Motion for Partial Summary Judgment. (Paper Nos. 7, 10, 19, 39, 41, 42.) Mr. Swinford has not challenged Plaintiff's right to condemn the easements or, in more recent filings, that Plaintiff should be granted immediate possession of the easements. Mr. Swinford does not address any of the standards for injunctive relief or articulate the likelihood of harm to him as the landowner if immediate possession is granted.

Instead, Mr. Swinford has stressed that plaintiff's offer of payment for the easements in question is inadequate in light of Mr. Swinford's agreement to sell the property to Pulte: "[Plaintiff's] offer is significantly less than Pulte's contract which establishes the value per lot" (Paper No. 7, October 10, 2006); "[Plaintiff] will not accommodate the requirements [of the homebuilder]. . . . This will cost me a substantial amount of money." (Paper No. 10, October 27, 2006); "[P]laintiff's bond amount of $29,635.68 is totally insufficient. The contract price I have with Pulte would equate to about $152,000.00 per acre." (Paper No. 19, January 30, 2007);

"Dominion's proposed easement places my contract with Pulte Homes in jeopardy. If my contract is terminated because of the Title Defect, I will sustain damages at the full contract price." (Paper No. 39, July 20, 2007); "[T]he court should take into consideration the contract to establish value and damages for taking of the easement. . . . If the court grants the easement, I am still requesting that the court place enough in escrow to cover the contract price and other expenses . . . ." (Paper No. 41, August 10, 2007.)

Mr. Swinford has also brought to the Court's attention that Pulte considers the proposed pipeline to be a "title defect" under Paragraph 2.3 of the Agreement of Sale which might allow Pulte to terminate its contract with Mr. Swinford. (Paper Nos. 39, 42). Although Pulte has reserved its rights under this section of the contract, it has not indicated its intent to terminate the contract with Mr. Swinford. In fact, although Pulte initially feared that the pipeline would significantly disrupt Pulte's development plans for the property, this particular concern no longer exists. *See* Paper No. 39, Ex. 1 (letter from Pulte to defendant). In addition to the "title defect" issue, there are a number of other contingencies and, therefore, no guarantees that the contract will close. (Paper No. 40 at 4.) While it is clear that Mr. Swinford will suffer financial harm in the form of the lost profits from the sale if Pulte terminates the sales contract, the likelihood of that harm is far too speculative to quantify. As discussed above, it is clear that plaintiff is entitled to the grant of the easements and the remaining issue is whether plaintiff has met the requirements for injunctive relief, thereby entitling plaintiff to immediate possession. Mr. Swinford has not articulated any reason as to why the granting of immediate possession of the easement has any greater likelihood of harm to him than if the possession were granted in the future.

In authorizing the pipeline expansion project, FERC was aware that some landowners would be affected. FERC nonetheless determined "there should be *de minimis* economic impact on landowners since 75 percent of the new pipeline's length will parallel the existing Cove Point Pipeline and the remaining 25 percent of the new pipeline route will deviate from existing pipeline route in order to minimize the environmental and landowner impacts." Compl., Ex. 2 (FERC Order Issuing Certificates and Granting Section 3 Authority, ¶ 129).

What is apparent from Mr. Sommerville's declaration, and from the subsequent course of litigation in this matter, is Mr. Swinford's fundamental dissatisfaction with the amount of compensation plaintiff has offered. Based on the evidence presented to this Court, the harm to Mr. Swinford is not irreparable but rather is compensable. The harm to the landowner, therefore, is outweighed by plaintiff's immediate need for the easements. Granting the requested relief of immediate possession of the easements will not increase the economic impact on Mr. Swinford of the pipeline expansion. The Fifth Amendment guarantees the Defendant's right to just compensation for the condemned property "no matter when the condemnor takes possession." *E. Tennessee*, 361 F.3d at 829. Just compensation will be determined in this case only after all the relevant facts and circumstances have been considered.

3. *Plaintiff will succeed on the merits.*

The Court has found that plaintiff, having obtained a certificate of public convenience and necessity from FERC, is authorized to condemn the property. Plaintiff's success on the merits is established.

4. *The public interest.*

The Fourth Circuit has recognized the substantial public interest involved in the need for

14

natural gas supply. *E. Tennessee*, 361 F.3d at 830. Here, as in that case, FERC has evaluated the need and concluded the pipeline project is required by public convenience and necessity. *Id.* In this case, FERC explained how the project serves the public interest:

> Expansion of the Cove Point Pipeline facilities . . . will make available gas supplies which would otherwise be unavailable, providing shippers enhanced access to firm natural gas storage capabilities and to additional natural gas markets throughout the northern and eastern United States. By this proposal, new gas supplies will be delivered to where they are needed in the Mid-Atlantic and northeastern United States. The project will bring new gas supplies into the heart of the market area by providing new gas sources for the shippers on Dominion, Transco and Columbia pipeline systems, which serve most of the major eastern United States markets and where the demand for natural gas is growing. In addition, LNG is expected to play a vital role in meeting the increased demands for natural gas from all consuming sectors. The growing importance of LNG is evidenced by INGAA's[8] July 2004 study which found that a delay as short as two years in the construction[] of gas pipelines, storage facilities, and LNG import terminals will cost the United States gas consumers more than $200 billion.

Compl., Ex. 2 (FERC Order Issuing Certificates and Granting Section 3 Authority, ¶ 126).

To assure that these needs are timely met, FERC has ordered plaintiff to complete the project by June 15, 2009. No evidence has been presented contradicting that the necessity of this project is to serve the public interest.

### 5.     *Appropriate amount of bond.*

Mr. Swinford requests that if the Court grants an easement, that the bond should be in an amount equal to the contract price with Pulte, that is, $19,832,600.00 (Paper No. 40 at 4), and should also include other legal and appraisal expenses (Paper Nos. 41, 42). For the reasons stated below, the Court concludes that the appropriate amount of bond is the value of the

---

[8] Interstate Natural Gas Association of America.

easements as set forth in defendant's appraisal.

"[T]he Constitution 'does not provide or require that compensation be paid in advance of the occupancy of the land to be taken. But the owner is entitled to reasonable, certain, and adequate provision for obtaining compensation before his occupancy is disturbed.'" *E. Tennessee*, 361 F.3d at 824 (quoting *Cherokee Nation v. S. Kan. Ry. Co.*, 135 U.S. 641, 659 (1890)); *see also* Fed. R. Civ. P. 71A(j) ("The plaintiff shall deposit with the court any money required by law as a condition to the exercise of the power of eminent domain[.]"). Rule 71A(j) provides for the possibility that funds deposited with the court may ultimately prove to have been greater or less than the amount finally awarded as just compensation for the taking:

> If the compensation finally awarded to any defendant exceeds the amount which has been paid to that defendant on distribution of the deposit, the court shall enter judgment against the plaintiff and in favor of that defendant for the deficiency. If the compensation finally awarded to any defendant is less than the amount which has been paid to that defendant, the court shall enter judgment against that defendant and in favor of the plaintiff for the overpayment.

Fed. R. Civ. P. 71A(j). Thus, it is not necessary that a plaintiff post bond in the exact amount that will finally be awarded to the defendant; it is only necessary that the bond's amount be sufficient to secure defendant's right to just compensation.

Where the taking is of an easement rather than fee simple, "the fact that the fee remains in the landowner must be taken into consideration, the entire fee or rental value not being recoverable." *United States v. 2,648.31 Acres of Land, More or Less, in the Counties of Charlotte and Halifax, Virginia, et al.*, 218 F.2d 518, 523 (4th Cir. 1955) (quoting 29 C.J.S. *Eminent Domain* § 152). Thus, the measure of damages for the taking of an easement is "the difference between the fair market value of the property before and after the taking." *United*

*States v. An Easement and Right of Way 150 Feet Wide and 582.4 Feet Long over Certain Land in De Kalb Co., Tennessee*, 182 F. Supp. 899, 902 (M.D. Tenn. 1960) (citing *Olson v. United States*, 292 U.S. 246 (1934)).

Thus, the measure of damages is not, as Mr. Swinford suggests, the full fair market value of the property or the full amount of the Pulte contract. Even if Pulte terminated its contract with Mr. Swinford, defendant would not be entitled to recover the full contract price (which may or may not be the fair market value). As Mr. Swinford recognizes, this would allow a double recovery, an award of the amount he would have received from Pulte plus retention of the property. (Paper No. 41.) Rather, the true measure of damages is the diminution in value of the property after the grant of the easement. The appraisals commissioned by the parties address this difference in value.

Plaintiff has commissioned an appraisal of the subject easements, which indicated their total value to be $29,635.68. Plaintiff asks that the Court set bond in this amount. (Paper No. 40 at 5). Mr. Swinford has likewise commissioned an appraisal of the subject easements, and this appraisal sets the value of the easements at $228,000.00.[9] (Paper No. 31, Attach. 2.) Given the disparity between the appraisals, the Court cannot conclude that setting a bond in substantially lesser amount of $29,635.68 is adequate. Rather, in light of the dispute regarding the value of the easements, the Court believes it is appropriate to set a bond in the higher amount of $228,000.00, which is more likely sufficient to secure defendant's right to just compensation. As noted above,

---

[9] Plaintiff indicates in its Reply to Defendant's Response to Plaintiff Motion for Partial Summary Judgment that Mr. Swinford had obtained an appraisal in the amount of $208,000.00. (Paper No. 40 at 5.) The actual amount stated on the appraisal is $228,000.00. (Paper No. 31, Attach. 2.)

17

the amount of the bond may ultimately prove to be greater or less than the amount finally awarded as just compensation for the taking.

## CONCLUSION

Defendant Bruce Swinford failed to present any evidence, in accordance with Rule 56, which rebuts the declarations of Mr. Mordan and Mr. Sommerville. No genuine issue of material fact has been presented. Partial summary judgment in favor of plaintiff and against the defendant is appropriate. Plaintiff has the right to condemn the property and has shown that a preliminary injunction granting immediate possession should issue. An Order will be entered granting plaintiff immediate possession of the easements as described in the Complaint. Immediate possession is contingent upon plaintiff posting, with this Court, a bond in the amount of $228,000.00 with corporate surety, representing defendant's appraised value of the subject easements.

Date: 9/20/07

_____
Peter J. Messitte
United States District Judge